# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Christopher Cravens, being first duly sworn, hereby depose and state as follows:

## PRELIMINARY BACKGROUND INFORMATION

1. Your affiant is a criminal investigator and law enforcement officer of the United States who is empowered by federal law to conduct investigations and make arrests for offenses enumerated in Titles 8, 18, 19, 21, and 31 of the United States Code.

2. I am a Special Agent with Homeland Security Investigations (HSI), United States Department of Homeland Security, and have been so employed since August 2019.

3. I am a graduate of the Federal Law Enforcement Training Center, Glynco, Georgia. I was trained in multiple areas of law enforcement to include but not limited to, criminal investigative techniques, evidence processing, and federal law.  Prior to becoming a Special Agent, I worked as a local law enforcement officer from 2013 to 2019 with Hillsborough County Sheriff's Office (Tampa, FL), Harrisonburg Police Department (Harrisonburg, VA), and Henrico County Sheriff's Office (Richmond, VA).  During that time, I investigated violations of state criminal and civil laws, conducted interviews, conducted covert surveillance, collected evidence, and made arrests for violations of criminal state laws. I received a Bachelor of Science in Criminal Justice from Virginia Commonwealth University.

4. During my law enforcement career, I have received formal training, as well as on-the-job training, relative to the investigation and interdiction of human smuggling and human trafficking. I have become knowledgeable regarding the trafficking methods employed by alien smugglers to conceal, transport, resupply, harbor aliens present in the United States without admission or parole, as well as the use of different technologies used by criminal organizations to communicate and facilitate the movement of aliens into and throughout the United States.

5.  The statements contained in this affidavit are based on my experience and background as a law enforcement officer and on information provided by other law enforcement agents.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.  I make this affidavit in support of an application for a search warrant on the following items, all of which were found in the bedroom of A███  T████ (hereafter referred to as T████) while executing a federal residential search warrant (22-00235MB):

>   Eleven (11) Micro Secure Digital (SD) Memory Cards, recovered and seized from A███  T████'s residence (these devices hereafter referred to as MICRO SD CARDS) and all internal memory therein.

7.  The purpose of this application is to seize and search evidence, more particularly described in Attachment A, of violations of 18 U.S.C. §§ 2252(a)(2), 2252(a)(4)(B) and 2252A(5)(B), which make it a crime to distribute, receive, possess and knowingly access with intent to view, child pornography in, or using a facility of, interstate or foreign commerce; and Title 18, U.S.C , §§ 2251(a) and (e), which make it a crime to produce child pornography when the visual depiction was produced using materials that had been mailed, shipped and transported in interstate and foreign commerce by any means or was actually transported in interstate commerce.

8.  Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §§ 2252(a)(2), 2252 (a)(4)(B), 2252A(5)(B), and 2251(a) and (e) is located within the MICRO SD CARDS.

9.  The items to be searched were seized as evidence in connection with a federal search warrant (22-00235MB), executed on June 9, 2022, and are currently in the lawful possession of Homeland Security Investigation agents.

10. In summary, the following affidavit sets forth facts that establish that the owner and/or user of the MICRO SD CARDS received and possessed images depicting minors engaging in sexually explicit activity, and that there is probable cause to believe that evidence of the aforementioned violations may be found on the MICRO SD CARDS.

## PERTINENT FEDERAL CRIMINAL STATUTES

11. This investigation concerns alleged violations of 18 U.S.C. § 2252 and 2252A, which prohibit a person from knowingly possessing or accessing sexually explicit images (child pornography) with the intent to view them, as well as transporting, receiving, distributing or possessing in interstate or foreign commerce, or by using any facility or means of interstate or foreign commerce, any visual depiction of minors engaging in sexually explicit conduct (child pornography), and Title 18, U.S.C , §§ 2251(a) and (e), which makes it a crime for any person to employ, use, persuade, induce, entice, or coerce any minor to engage in, or have a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

## DEFINITIONS

12. The following non-exhaustive list of definitions applies to this Affidavit and Attachments A and B:

    a. <u>Micro secure digital cards (Micro SD Cards)</u>: A smaller SD card used to hold large volumes of data, typically used in portable devices such as smartphones, dash cameras, small cameras, etc.

    b. <u>Cellular telephone</u>: A cellular telephone (or mobile telephone, or wireless telephone) is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones now offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the devices.

    c. <u>Smart Phone</u>: a handheld wireless device containing some or all of the features, capabilities, and functionality of cellular telephones, portable media players, personal digital assistants, and tablet computers. Like these other devices, smart phones have either a keyboard or touch screen for entering data, and can be used both to communicate over cellular networks, or to access the Internet through

cellular networks, 802.11 "wi-fi" networks, or otherwise.  Additionally, these smart phones generally have a built-in camera capable of capturing both still pictures and video.  Modern smart phones also have the capability to determine their location via the use of GPS.  These coordinates may be embedded within the photographs or videos captured via the smart phone and can be recovered through analysis, thus revealing where, geographically, the photo or video was taken.

d.  Digital device includes any electronic system or device capable of storing and/or processing data in digital form, including: central processing units; laptop or notebook computers; personal digital assistants; wireless communication devices such as telephone paging devices, beepers and mobile telephones; peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors and drives intended for removable media; related communications devices such as modems, cables and connections; storage media such as hard disk drives, floppy disks, compact disks, magnetic tapes and memory chips; and security devices.

e.  Computer refers to an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.  *See* 18 U.S.C. 1030(e)(1).

f.  Computer hardware consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data.  Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices),

peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

g. <u>Computer software</u> is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic or other digital form. It commonly includes computer operating systems, applications and utilities.

h. <u>Computer-related documentation</u> consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software or other related items.

i. <u>Computer passwords and data security devices</u> consist of information or items designed to restrict access to or hide computer software, documentation or data. Data security devices may consist of hardware, software or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to unlock particular data security devices. Data security hardware may include encryption devices, chips and circuit boards. Data security software of digital code may include programming code that creates test keys or hot keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide or booby-trap protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

j. <u>Digital camera</u>: A digital camera is a device that records still and moving images digitally. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a

separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

k. <u>Child Pornography</u> is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.  *See* 18 U.S.C. 2256(8).

l. <u>Child Erotica</u> refers to materials or items that are sexually arousing to persons having a sexual interest in minors, but that are not, in and of themselves, obscene or illegal.  In contrast to "child pornography," this material does not necessarily depict minors in sexually explicit poses or positions.  Some of the more common types of child erotica include photographs that are not sexually explicit, drawings, sketches, fantasy writing, and diaries.  *See Kenneth V. Lanning, Child Molesters: A Behavioral Analysis* (2001) at 65.  Federal courts have recognized the evidentiary value of child erotica and its admissibility in child pornography cases.  *See United States v. Cross*, 928 F.2d 1030 (11th Cir. 1991) (testimony about persons deriving sexual satisfaction from and collecting non-sexual photographs of children admissible to show intent and explain actions of defendant); *United States v. Caldwell*, No. 97-5618, 1999 WL 238655 (E.D. Ky. Apr. 13, 1999) (child erotica admissible under Federal Rule of Evidence 404(b) to show knowledge or intent).

m. <u>Visual depictions</u> include undeveloped film and videotape, and data stored on

computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. 2256(5).

n.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

o.  Internet Service Providers or ISPs are commercial organizations, which provide individuals and businesses access to the Internet.  ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage and co-location of computers and other communications equipment.  ISPs can offer various means by which to access the Internet including telephone based dial-up, broadband based access via a digital subscriber line (DSL) or cable television, dedicated circuits or satellite based subscription.  ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth that the connection supports.  Many ISPs assign each subscriber an account name such as a user name or screen name, an e-mail address, and an e-mail mailbox and the subscriber typically creates a password for the account.

p.  IP Address: AInternet Protocol address or IP address refers to a unique number used by a computer or other device to access the Internet.  IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet.  IP addresses might also be static, if an ISP assigns a user's computer a particular IP address which is used each time the computer accesses the Internet.  Internet Service Providers maintain logs of which subscriber was issued a particular IP address

at any particular time.

q.  <u>ISP Records</u> are records maintained by ISPs pertaining to their subscribers (regardless of whether those subscribers are individuals or entities).  These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ISPs servers and other information, which may be stored both in computer data format and in written or printed record format.  ISPs reserve and/or maintain computer disk storage space on their computer system for their subscribers= use.  This service by ISPs allows for both temporary and long-term storage of electronic communications and many other types of electronic data and files.

r.  <u>Minor</u> means any person under the age of eighteen years.  *See* 18 U.S.C. ' 2256(1).

s.  <u>Sexually explicit conduct</u> means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons.  *See* 18 U.S.C. ' 2256(2).

t.  The terms records, documents and materials include all information recorded in any form, visual or aural, and by any means, whether in hand-made form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (including, but not limited to, tape recordings, cassettes, compact

discs, electronic or magnetic storage devices such as floppy diskettes, hard disks, CD-ROMs, digital video disks (DVDs), Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, memory calculators, electronic dialers or electronic notebooks, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

u.  Image or copy refers to an accurate reproduction of information contained on an original physical item, independent of the electronic storage device.  "Imaging" or Acopying" maintains contents, but attributes may change during the reproduction.

## CHARACTERISTICS COMMON TO INDIVIDUALS INVOLVED IN POSSESSING CHILD PORNOGRAPHY AND WHO HAVE A SEXUAL INTEREST IN CHILDREN

13. Based on my training related to child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned that individuals who view images of child pornography and who have a sexual interest in children, and in images of children, have certain characteristics:

a.  Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b.  Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media.  Individuals who have a sexual interest in

children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Individuals who have a sexual interest in children or images of children frequently possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d. Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the individual to view the collection, which is valued highly.

e. Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f. Individuals who have a sexual interest in children or images of children prefer

not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

g. As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files which were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data.

h. Increasingly, with faster internet download speed and the growth of file-sharing networks and other platforms through which individuals may trade child pornography, some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis. The individual will replenish their supply via their peer to peer connection when they desire more images to satisfy their sexual interest in children. Evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools. Even in instances in which an individual engages in a cycle of downloading, viewing, and deleting images, a selection of favored images involving a particular child or act are often

maintained on the device.  Further, a computer user's Internet activities generally leave traces in the web cache and history files of the browser used.  A forensic examiner can often recover evidence indicating whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files which were uploaded or downloaded.  Such information is often maintained indefinitely until overwritten by other data.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

16. As described above, and in Attachments A and B, this application seeks permission to search and seize the content, data, and images that the MICRO SD CARDS might contain, which pertain to violations of 18 U.S.C. §§ 2252 (a)(4)(B), 2252A(5)(B), 2251(a) and (e).  Some electronic records on these devices may take the form of files, photographs, videos documents, and other data that is user-generated.  Other data might become meaningful only upon forensic analysis.

17. Based on my knowledge, training, and experience, I know that:

   a. Files or remnants of files can be recovered months or even years after they have been downloaded onto an electronic device, deleted, or viewed via the Internet. Electronic files downloaded to an electronic device can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file from an electronic device, the data contained in the file does not necessarily disappear; rather, that data remains on the storage medium until it is overwritten by new data.

   b. Wholly apart from user-generated files, electronic devices often contain electronic evidence of how the device has been used, what it has been used for, and who has used it.  This evidence can take the form of operating system configurations, artifacts from operating system or application operation, file

system data structures, and other files.

c. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." These files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

d. As further described in Attachment A, this application seeks permission to locate not only data that might serve as direct evidence of the crimes described on the warrant, but also for evidence that establishes how the MICRO SD CARDS were used, the purpose of their use, who used them, and when. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

e. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

f. The government intends to make and retain a full image copy of the seized media, so that a copy of the evidence, rather than the original evidence, can be examined. The government will seize and retain both the original evidence and any copies of this evidence. This procedure will ensure that the original evidence remains intact and that potential child pornography and instrumentalities of the crimes will not be returned to the subject.

g. Computer storage devices (like hard drives, diskettes, tapes, laser disks, and others) store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she may store it in

random order with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This examination process can take weeks or months, depending on the volume of the data stored, and it would be impractical to attempt this kind of data search on-site.

h. Searching computer systems for criminal evidence is a highly technical process requiring expert skills in a properly controlled environment. The vast array of computer hardware and software available today requires even computer experts to specialize in some systems and applications. It is difficult to know before a search which expert should analyze the system and its data. A search of a computer system is an exacting scientific procedure, which is designed to protect the integrity of the evidence and to recover hidden, erased, compressed, password-protected, and other encrypted files. Because computer evidence is extremely vulnerable to tampering and destruction (both from external sources and from code embedded in the system as a "booby-trap"), the controlled environment of a laboratory is essential to its complete and accurate analysis.

## FACTS OF THE INVESTIGATION

23. On June 3, 2022, the Honorable Eric J. Markovich, a Magistrate Judge in the District of Arizona, issued a residential search warrant for ████████████████████ Casa Grande, Arizona.

24. On June 9, 2022, Homeland Security Investigations (HSI) Special Agents executed the residential search warrant. While executing the search warrant, agents located T████ inside of the residence. After agents informed T█████ that he was free to leave, he stayed and answered questions from agents. T█████ told agents that his bedroom was the one with a large lock on the door. Inside of the residence, there was only one

22-01785MB

bedroom with a large lock on the door.  Inside the bedroom was a large black safe, which contained, in relevant part, two (2) USB storage devices, an SD card/micro SD card adapter, and a silver metal container with eleven (11) micro SD cards and an SD adapter inside. The adaptor enables SD cards and micro SD cards to connect to a computer via a USB port.  The device does not store data.

25. After locating the items, your affiant asked for consent from T███████ to search the storage devices that were located inside the large black safe.  T███████ agreed and signed a consent form.  On the consent form, your affiant wrote "USB Storage Devices" and accidently did not include the micro SD cards.  After signing the consent form, your affiant asked T███████ what was going to be found on the storage devices.  TOVAR asked to speak to your affiant away from his girlfriend.  After stepping away from his girlfriend, T███████ informed your affiant that we were going to find "porn" on the storage devices.  While speaking to T███████, your affiant noticed that he appeared to be extremely nervous and was looking down toward the ground.  Your affiant asked T███████ if the porn was going to be of young kids, and T███████ replied that we were going to find "child porn" on the devices.  He stated that he has had the storage devices since he was fifteen (15) years old; he is currently thirty (30) years old.

26. On June 13, 2022, a computer forensic agent conducted the forensic preview of the USB devices. After conducting the forensic preview, the agent found that both of the USB storage devices contained numerous images and videos of various females, most of which appeared to have been self-produced (*i.e.,* it appeared that the females took the photographs/videos of themselves).  The content of the images/videos ranged from non-nude/non-sexual, to nude/sexual.   Most of the females depicted in the images/videos appeared to be adults.   A few of the images/videos—which also contained nudity and/or sexual positioning—depicted females whose ages were difficult to determine. They had younger-looking faces (possibly in their teens), but

they were also clearly pubescent.  None of the images/videos observed during the forensic preview contained clearly identifiable child pornography.

27. Based on T████'s admission and the fact the agents did not locate any identifiable child pornography on the USB storage devices, agents believe that there will be child pornography located on the MICRO SD CARDS.

## CONCLUSION

28. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of criminal offenses, in violation 18 U.S.C. §§ 2252(a)(2), 2252(a)(4)(B), 2252A(5)(B), 2251(a) and (e), may be located in the MICRO SD CARDS and respectfully request that a warrant issue for the search and seizure of those items described in Attachments A and B.

Respectfully submitted,

CHRISTOPHER
M CRAVENS

Digitally signed by
CHRISTOPHER M CRAVENS
Date: 2022.06.16 16:25:04
-07'00'

Christopher Cravens
Special Agent
Homeland Security Investigations
Sells, Arizona

Subscribed and sworn to before me
on this __17th__ day of June, 2022

Honorable Bruce G. Macdonald
United States Magistrate Judge

17

22-01785MB

## <u>ATTACHMENT A</u>

## <u>ITEMS TO BE SEARCHED</u>

The following devices, which are currently being held in the HSI Sells, Low Risk
Evidence room located at Mile Marker 112.5 Highway 86, Sells, Arizona 85634:

- Eleven Micro Secure Digital (SD) Memory Cards, recovered and seized from
  A███ T██████'s residence on June 9, 2022, and all internal memory therein.

# ATTACHMENT B

# DESCRIPTION OF ITEMS TO BE SEIZED

All records on the MICRO SD CARDS, as described in Attachment A, that relate to violations of U.S.C. §§ 2252 and 2252A, including:

1.      Images and videos of child pornography and files pertaining to or containing images of child pornography, in any form, wherever they may be stored or found.

2.      Stored photographs, videos, or any images of minors;

3.      Any picture or video messages pertaining to or depicting minors engaged in sexually explicit conduct, including the data content of such messages, and call detail records for said messages;

4.      Any stored e-mails, instant messages, or other communications discussing or pertaining to minors engaged in sexually explicit conduct, and call detail records for said messages;

5.      Any stored messages with any minors or people appearing to be or claiming to be minors;

6.      Any and all notes, documents, records, or correspondence, in any format or medium (including, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or chat rooms that provide or make accessible child pornography to members, or that pertain to illicit sexual conduct with minors;

7.      Information, correspondence, records, or documents pertaining to the accessing of, possession, receipt or distribution of child pornography that were transmitted or received, including:

        a.      Any and all records of Internet usage, including usernames, e-mail addresses and identities assumed for the purposes of communication on the Internet to purchase, sell, trade transmit or acquire child pornography. These records may forum records, chat room logs, e-mail messages and include any electronic files located within the device.

        b.      Evidence of persons who used, owned, or controlled the MICRO SD CARDS, including logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, instant messaging logs, photographs, videos,

electronic correspondence, and telephone contact lists stored on the MICRO SD CARDS.

9.      Records of other devices connecting to the internet while using the MICRO SD CARDS, including:

      a.      records of internet protocol addresses used;

      b.      records of internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

10.     Any hidden, deleted or erased data, communications, graphical images, multimedia items or documents found in the subject devices, which constitute evidence of the offenses listed above;

11.     Contextual information necessary to understand the evidence described in this attachment;

12.     Evidence of who used, owned, or controlled the MICRO SD CARDS at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved usernames and passwords, documents, and browsing history;

13.     Evidence of software that would allow others to control the MICRO SD CARDS, such as viruses, Trojan horses, and other forms of malicious software as well as evidence of the lack of such malicious software;

14.     Any and all computer software, including but not limited to any social media application software, that may be used to communicate with minors, or create, receive, distribute, store, modify, or destroy any of the evidence sought.

15.     Any and all records or other items pertaining to any minor depicted engaging in sexually explicit conduct.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.